MARY BREVARD ALEXANDER HOWELL, BILLY SHAW HOWELL, JR.,
    AND WIFE, BOBBY J. HOWELL, AND SYDENHAM BREVARD HOWELL,
    JOHN MARK HOWELL, SARAH FAIRLEY HOWELL, AND MARY
    ROBERTSON HOWELL, BY THEIR NEXT FRIEND, E. OSBORNE AYSCUE,
    JR. v. MARY R. ALEXANDER AND THE UNBORN ISSUE OF THE PLAINTIFF
    MARY BREVARD ALEXANDER HOWELL

No. 6826SC399

(Filed 15 January 1969)

1. **Appeal and Error §§ 26, 28—  exceptions to conclusions of law and
to entry of judgment**

   Exceptions to the conclusions of law and an exception to the entry of
   the judgment present the questions whether the facts found support the
   conclusions of law and the judgment entered pursuant thereto.

2. **Wills § 40—  devise with power of appointment — rule of construc-
tion**

   A will creating a power of appointment is to be interpreted so as to
   ascertain the intention of the donor and to give it effect unless some rule
   of law prevents.

3. **Wills § 28—  rule of construction**

   The intention of a testator as gathered from an entire instrument is the
   primary object in interpreting a will and must be given effect unless it is
   contrary to some rule of law or at variance with public policy.

4. **Wills §§ 34, 40—  devise of life estate with power of disposition**

   A life estate expressly created by the language of an instrument will not
   be converted into a fee or into any other form of estate greater than a life
   estate merely by reason of there being coupled with it a power of disposi-
   tion, however general or extensive.

5. **Wills § 40—  scope of life estate with full power of disposition**

   Where a will bequeaths and devises all of testator's property, real and
   personal, to testator's wife for her life with full powers of disposition,
   with remainder in fee simple absolute to testator's daughter, the wife is
   not authorized to acquire in her individual name fee simple title to a tract
   of land purchased with proceeds from a note payable to testator, otherwise
   testator's disposition of the remainder interest would be wholly frustrated.

6. **Wills §§ 34, 40—  powers of life tenant with power of disposition**

   Under a will giving to testator's wife a life estate in all of testator's
   property with full powers of disposition, with remainder in fee simple ab-
   solute to testator's daughter, the life tenant administers the life estate
   property in the nature of a trustee for benefit of herself and the remainder-
   man, and, although she may have the unbridled discretion to subject the
   entire estate to her own use during her lifetime, even to the extent of a
   complete dissipation of the estate, she cannot take title in herself to the
   exclusion of the remainderman's interest.

**7. Wills § 34; Estates § 3— right of remainderman to relief in equity**

A remainderman may have relief in equity when the life tenant is claiming a right to the property adverse to that of the remainderman.

**8. Trusts § 14— creation of constructive trust**

A constructive trust arises when land is acquired through fraud, or when, though acquired originally without fraud, it is against equity that land should be retained by him who holds it.

**9. Equity § 2— laches**

Where the action is barred by the applicable statute of limitations, the question of laches does not arise; when an action is not barred by the statute of limitations, equity will not bar relief on the ground of laches except upon special facts demanding exceptional relief.

**10. Equity § 2— laches**

Laches will not generally bar a party when the adverse party has not been prejudiced by delay.

**11. Trusts § 15— constructive trust — limitations**

A resulting or constructive trust, as distinguished from an express trust, is governed by the ten year statute of limitations (G.S. 1-56) and not by the three year statute of limitations (G.S. 1-52).

**12. Wills § 34; Trusts § 15— claims of life tenant adverse to remaindermen — action for constructive trust — limitations**

The fact that life tenant having broad powers of disposition acquired fee simple title in her own name to property in 1935 by use of proceeds from property subject to the remainder interest is not sufficient to put remaindermen on notice that the life tenant was acting in a manner adversely to their interests, but remaindermen were put on notice of the life tenant's adverse claim when the life tenant in 1962 executed deeds to two of the remaindermen asserting that she was seized in fee of the property purchased in 1935 and purporting to convey life estate to one remainderman with remainder over to the other remainderman; consequently, the ten year statute of limitations applicable to constructive trusts began to run in 1962, not in 1935, and would not bar the remaindermen's action instituted in 1967 to impose a constructive trust on property in life tenant's possession subject to the remainder interest.

**13. Wills § 34; Equity § 2— action by remaindermen to impose constructive trust — laches**

In remaindermen's action to impose a constructive trust on property held by life tenant which is subject to the remainder interest, the life tenant is not entitled to the exceptional relief of the doctrine of laches where neither the life tenant nor any purchaser for value from the life tenant has been prejudiced by the delay of five years in bringing the action.

APPEAL by plaintiffs and defendants, except Mary R. Alexander, from *Ervin, J.*, 27 May 1968, Schedule "A" Session, MECKLENBURG Superior Court.

The principal defendant, Mary R. Alexander, is the widow of S. B. Alexander, Jr. The other defendants are the unborn issue of the principal plaintiff, Mary Brevard Alexander Howell.

The principal plaintiff, Mary B. Alexander Howell, is the daughter and only child of S. B. Alexander, Jr., deceased, and Mary R. Alexander, the principal defendant. The plaintiff Billy Shaw Howell, Jr., is the son and only child of the principal plaintiff, and the remaining plaintiffs are his wife and four children.

S. B. Alexander, Jr., died testate 6 May 1935, and his will was duly admitted to probate. The two items of his will which are pertinent to this controversy are as follows:

"ITEM II: I do hereby give, devise and bequeath unto my dear wife, Mary R. Alexander, for and during the term of her natural life, all of my property and estate, real, personal and mixed, of every kind and description and wheresoever situated, to have and to hold to her, my said wife, for and during the term of her natural life; provided, however, that I do hereby fully authorize and empower my said wife to sell and convey any part or all of my said property and estate, at any time and upon such terms as she may desire, and to use, invest and reinvest the proceeds from such sale, in such manner and for such objects as she may deem advisable, and she shall not be held, expected or bound to account to any court or to any person for any part of said property or any of the proceeds of any sale thereof.

"ITEM III: Subject to the provisions of the foregoing Item and upon the death of my said wife, Mary R. Alexander, I do give, devise and bequeath all of my said property and estate to my beloved daughter, Mary Brevard Howell, to be hers in fee simple and absolute; provided, however, that if my said daughter shall die before the death of my said wife, leaving a child, children or the issue of such her surviving, then in such event my said property and estate shall go and belong to the said child, children or issue of such of my said daughter, the issue of such of my daughter's children as may have predeceased her to stand in the place of and take the share of their ancestor, taking per stirpes and not per capita."

Prior to his death, S. B. Alexander, Jr., conveyed a 107.11 acre tract of land to Charlotte Airport, Inc. and as part of the purchase price received a note in the amount of $65,708.58, secured by deed of trust. (This deed of trust also secured payment of a note in the amount of $28,290.72 given by Charlotte Airport, Inc. to City View

Development Company for the balance of purchase price for another tract of land. This note and tract of land are not involved in this controversy, and no further mention will be made of them.) Because of default in payment of the note the property described in the deed of trust was duly offered at public sale by the trustee. On 16 September 1935 the estate of S. B. Alexander, Jr., acting through Mary R. Alexander as executrix, became the last and highest bidder for the property.

Subsequent to the foreclosure sale, by letter dated 11 October 1935, the defendant Mary R. Alexander as executrix of the estate of S. B. Alexander, Jr., authorized and directed the trustee to convey the 107.11 acre tract of land to Mrs. Mary R. Alexander upon the payment of the bid by cash to the extent of the foreclosure expenses and by credit of the balance of the $65,708.58 note. Pursuant to this arrangement the trustee, by deed dated 11 October 1935, recorded in Mecklenburg County deed book 876 at page 34, conveyed the 107.11 acre tract to defendant Mary R. Alexander. This deed purports to convey a fee simple title to Mary R. Alexander; it does not mention a life estate.

Since acquiring this deed to the 107.11 acre tract Mary R. Alexander has made several conveyances in fee from the tract and has entered into several lease agreements respecting other portions of the tract. These conveyances are summarized in paragraph 10 of the stipulations entered into in this action; but, since Mary R. Alexander would have had the right to make the conveyances either as the holder of the fee simple title under the deed to her or as the holder of a life estate with power of sale under the will of S. B. Alexander, Jr., no contention is made by any of the parties with respect to these conveyances.

Plaintiffs bring this action to impose a constructive trust on the remainder of the 107.11 acre tract, and to have the court declare that Mary R. Alexander is the owner of a life estate therein, with the powers of disposition as contained in the will of S. B. Alexander, Jr., and that the remainder interests therein are those set forth in said will.

In addition to the pleadings and stipulations which establish the foregoing facts, the plaintiffs offered evidence which tends to show that plaintiffs first learned in April 1966 that the conveyance by the Trustee to Mary R. Alexander of the 107.11 acre tract had been made in the manner above described.

This cause was heard by Judge Ervin without a jury, by consent

of the parties. At the conclusion of the hearing the judge made findings of fact in accordance with the stipulations and the pleadings; and concluded and decreed as follows:

"1. This case is now at issue and the parties have duly waived the right of jury trial on any questions of fact arising hereunder.

"2. Under the provisions of the Last Will and Testament of her husband, S. B. Alexander, Jr., the defendant Mary R. Alexander acquired a life interest in the assets of his Estate (including the $65,708.58 Note referred to in paragraph 5 of the Findings of Fact of this Judgment) with the power to use and dispose of any portion thereof as she desired or deemed advisable without having to account to any Court or to any person. This power gave her the right to apply or appropriate any part of the assets of her husband's Estate for her own separate use and ownership to the exclusion of any interest of the remaindermen therein.

"3. The defendant Mary R. Alexander intended to acquire, and by virtue of the Deed from C. D. Taliaferro, Trustee, dated October 11, 1935, and recorded in Book 876 at page 34, in the Mecklenburg Registry (referred to in paragraph 9 of the Findings of Fact of this Judgment) did acquire, the Subject Property in fee simple absolute, free and clear of any interest therein of the remaindermen under the Last Will and Testament of S. B. Alexander, Jr.

"4. The defendant Mary R. Alexander does not hold any portion of the Subject Property in constructive trust for any of the plaintiffs or any of the defendant unborn issue of the plaintiff Mary Brevard Alexander Howell.

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

"1. Excepting only the interests heretofore conveyed by her, the defendant Mary R. Alexander is now the beneficial fee simple and absolute owner of the Subject Property and holds the same free and clear of any interest of the remaindermen under the Last Will and Testament of S. B. Alexander, Jr.

"2. The defendant Mary R. Alexander does not hold any portion of the Subject Property in constructive trust for any of the plaintiffs or any of the defendant unborn issue of the plaintiff Mary Brevard Alexander Howell."

Plaintiffs, and the defendant unborn issue of Mary B. Alexander Howell, appeal; they except to and assign as error conclusions of law numbers 2, 3 and 4, and the signing and entry of the Judgment.

*McCleneghan, Miller, Creasy & Johnston, by F. A. McCleneghan and H. Morrison Johnston, for appellants.*

*Ervin, Horack & McCartha, by Benjamin S. Horack, and William S. Lowndes for Mary R. Alexander, appellee.*

BROCK, J.

[1]    The exceptions to the conclusions of law and the exception to the entry of the judgment present the questions whether the facts found support the conclusions of law and the judgment entered pursuant thereto. *Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590.

It seems evident that the trial judge concluded that the will granted to the life tenant an unrestricted power of appointment with respect to the real and personal property in which she was given a life estate by the will, even to the extent of appointing it to herself in fee simple adversely to the interests of the remaindermen. This interpretation would allow the life tenant, by the simple expedient of appointing all of the real and personal property to herself in fee simple, to completely frustrate any testamentary disposition of the remainder interest; and, in effect, to convert her life estate to an estate in fee simple in the entire property devised and bequeathed by the testator.

[2, 3]    We must therefore examine the instrument in the light of well established rules of construction to determine the extent of the power granted to the life tenant. "An instrument, such as a deed or will, creating a power of appointment is to be interpreted so as to ascertain the intention of the donor and to give it effect unless some rule of law prevents. Effect should, if possible, be given to every word or clause in the instrument, so long as they are not inconsistent with the general intent of the instrument as a whole." 41 Am. Jur., Powers, § 9, p. 812. "The intention of a testator as gathered from an entire instrument is the primary object in interpreting a will, and must be given effect unless it is contrary to some rule of law or at variance with the public policy, for the intent of the testator is his will." 7 Strong, N. C. Index 2d, Wills, § 28, p. 595.

In Item II of the will testator clearly granted to his wife a life estate in all of his property. Then, by proviso, he gave to her broad

powers to sell, convey, use, invest and reinvest the proceeds from such sales, and provided that she was not accountable to anyone for any of the property or the proceeds of any sale. In Item III testator gave, upon the death of his wife, all of his estate to his daughter, subject to the provisions of Item II. Thereafter followed provisions in the event his daughter predeceased his wife.

[4]    "The rule followed generally now in almost all jurisdictions is that a life estate expressly created by the language of an instrument will not be converted into a fee, or into any other form of estate greater than a life estate, merely by reason of their being coupled with it a power of disposition, however general or extensive. In other words, where an estate for life, with remainder over, is given, with a power of disposition in fee of the remainder annexed, the limitation for life of the first taker will control, and the life estate will not be enlarged to a fee, notwithstanding the power of the life tenant to dispose of the fee." 28 Am. Jur. 2d, Estates, § 81, p. 182; *Darden v. Boyette*, 247 N.C. 26, 100 S.E. 2d 359; *Harris v. Distributing Co.*, 172 N.C. 14, 89 S.E. 789. "It is also well settled that a general power of appointment conferred upon a life tenant does not enlarge his estate." *Harris v. Distributing Co.*, *supra*.

[5]    In this case, defendant Mary R. Alexander used a note which was payable to testator, and in which she was given a life estate with the power of disposition, and she exchanged, or invested, it in a 107.11 acre tract of land which was not a part of the estate; in doing so she caused the deed to her to be drawn so as to convey to her a fee simple title in the real estate. The trial judge concluded that she did this intentionally, and that this intent coupled with the powers set out in the will served to vest in her a fee simple title to the 107.11 acre tract free and discharged of any interest in the remaindermen. This we hold to be error.

By Item II and Item III of his will, S. B. Alexander, Jr., intended that his widow, the defendant Mary R. Alexander, should have a life estate in all of his property, and that the remainder after the life estate should go to his daughter, the plaintiff Mary Brevard Alexander Howell. During the pendency of the life estate testator intended that his widow should not suffer or be in need so long as any of his property remained. Therefore, he gave his widow, as life tenant, plenary authority to absolutely dispose of his property for her best interests, comfort, luxury, and support during her lifetime. She was authorized to exchange, invest and reinvest for the obvious purpose of maintaining income producing property in the estate, and for the obvious purpose of making any other advantageous sale or exchange.

All of this the life tenant could do in her discretion, but it was testator's intention that these powers be exercised for her personal benefit during her lifetime. He did not intend that these powers might be exercised by the life tenant to convert his devise and bequest to her into a fee simple title whereby the property would be disposed of at her death as her estate, either by will or intestacy; otherwise his disposition of the remainder interest would be wholly frustrated.

In *Anderson v. Kennon*, 353 S.W. 2d 241 (Tex. 1961), the court, stating that a life tenant could not by fraudulent means defeat the rights of the remainderman by dealing with himself, reversed a judgment dismissing a suit brought by remainderman to set aside a conveyance by the life tenant to a corporation which reconveyed the property to the latter. Although the language of the will which created the life estate was very broad in empowering the life tenant to dispose of the property ("she may from time to time, in any manner or to any extent as she may deem best, mortgage, sell, convey and dispose of, conveying fee simple title thereto, for such consideration and on such terms as she may desire, without limitation or restriction whatever"), the court said that the will did not authorize her to convey the land, or any part of it, to herself as her separate property. Annot., 89 A.L.R. 2d 651 (1963).

In *Cales v. Dressler*, 315 Ill. 142, 146 N.E. 162, a deed by life tenant to her lawyer's stenographer, and reconveyance of the stenographer to the life tenant which was done in order that the property might pass under her will instead of the will of her testator were held ineffective to defeat the testator's intention that the remainder should pass by his will to the remainderman designated by him in the will. Annot., 89 A.L.R. 2d 650 (1963).

Under will giving widow life estate with full power to sell or use, but disposing of remainder at wife's death, wife had power to dispose of property only for her personal use and benefit during her lifetime, and purported conveyance to trustee with gifts over to others at wife's death was ineffective. *Parsons v. Smith*, 190 Kan. 569, 376 P. 2d 899. Annot., 89 A.L.R. 2d 649 (1963), (Later Case Service 1968).

"Questions as to what title, if any, a life tenant has to proceeds (or property obtained with proceeds) coming to his hands by reason of his exercise of a power of sale or disposal are of course wholly dependent upon the terms and intent of the will or other instrument creating the power and property interests. However, under nearly all instruments thus far in litigation, especially where the case has been merely the simple one of a life estate with superadded power of sale,

the proceeds (or property obtained therewith) have been regarded as taking the place of the property sold so that title was held to be in the remainderman subject to such rights of possession, user, investment, reinvestment, expenditure, or consumption as may have been given the life tenant." Annot., 158 A.L.R. 480 (1945). See, *Darden v. Matthews*, 173 N.C. 186, 91 S.E. 835.

[6]  A life tenant with such broad discretionary powers of disposition as are contained in this will administers the life estate property in the nature of a trustee for the benefit of herself and the remainderman. And, although she may have the unbridled discretion to subject the entire estate to her own use during her lifetime, even to the extent of a complete dissipation of the estate, she cannot take title in herself to the exclusion of the interest of the remainderman.

[7]  "The conduct of a life tenant with respect to the property in which the estate exists may be such that it will justify the intervention of equity to preserve the property not only for the remainderman but also for the life tenant, and to protect the interests of all." 31 C.J.S., Estates, § 60, p. 122. "A remainderman may have relief in equity when the life tenant is claiming a right to the property adverse to that of the remainderman." 31 C.J.S., Estates, § 60, p. 123.

[8]  In this action the plaintiffs seek the equitable aid of the court to impose a constructive trust on the remaining portion of the 107.11 acre tract for the benefit of the life tenant, with the powers of disposition contained in the will, and for the benefit of the remainderman as set forth in the will. A constructive trust arises when land is acquired through fraud, or when, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. *Teachey v. Gurley*, 214 N.C. 288, 199 S.E. 83.

The defendant has affirmatively pleaded adverse possession for seven years under color of title and specifically pleaded adverse possession for twenty years; however, the defendant by her statement in open court affirmatively withdrew the pleas of adverse possession.

The defendant has affirmatively pleaded laches and the limitations of G.S. 1-52 and 1-56 as a bar to this action. The facts for ruling with respect to laches or the running of the statutes of limitations seem to have been before the court; but, because of the trial court's disposition, no ruling with respect thereto was made. Since the trial court is the finder of the facts, and has made no findings with respect to the brief testimony offered by plaintiffs at the trial, we cannot assume what these findings would be. However, a finding from that testimony which would be most favorable to defendant appellee

and most against the plaintiff appellants would be for the judge to disbelieve and reject the testimony, which would amount to no finding of fact from the testimony. Therefore we exclude all of the testimony from our consideration, and proceed upon the stipulations of fact entered into by the parties.

From the stipulations the following appears with respect to the question of laches or the running of the statutes of limitation: In 1935 defendant appellee, as Executrix of S. B. Alexander, Jr., entered the high bid at a public sale of the 107.11 acre tract. Later, by letter, she directed the trustee under the foreclosed deed of trust to convey the 107.11 acre tract to her individually, and she paid the purchase price with a note which was a part of the estate of S. B. Alexander, Jr. On 11 October 1935, the trustee conveyed the 107.11 acre tract to Mary R. Alexander by deed sufficient in form to convey the fee simple title. Thereafter, during the period 1936 to 1963, defendant appellee conveyed several portions of the tract in fee, and entered into lease agreements with respect to other portions of the tract. Defendant appellee has received and used the proceeds of those sales and leases for her own purposes. By deed dated 24 May 1962, defendant appellee conveyed to plaintiff appellant Mary Brevard Alexander Howell, in consideration of love and affection, a life estate in a portion of said 107.11 acre tract which deed contains the covenant that grantor is seized in fee of the premises described therein. This deed was filed for recording in Mecklenburg County on 4 June 1962. By deed dated 24 May 1962, defendant appellee conveyed to plaintiff appellant Billy Shaw Howell, Jr., in consideration of love and affection, the remainder in fee simple to the portion of the 107.11 acre tract described in the conveyance of the life estate to his mother, Mary Brevard Alexander Howell; and this deed contains the covenant that grantor is seized in fee of the premises described therein. It also was filed for recording in Mecklenburg County on 4 June 1962.

The record shows that this action was instituted 31 August 1967, approximately thirty-one years and ten months after the date of the deed from the trustee (under the foreclosed deed of trust) to defendant appellee Mary R. Alexander.

[9, 10]    Where the action is barred by the applicable statute of limitations, the question of laches does not arise. And when an action is not barred by the pertinent statute of limitations, equity will not bar relief on the ground of laches except upon special facts demanding exceptional relief. Generally laches will not bar a party when the adverse party has not been prejudiced by delay. 3 Strong, N. C. Index 2d, Equity, § 2, p. 551.

[11]   A resulting or constructive trust, as distinguished from an express trust, is governed by the ten year statute of limitations (G.S. 1-56), and not by the three year statute of limitations (G.S. 1-52). *Bowen v. Darden,* 241 N.C. 11, 84 S.E. 2d 289.

Counsel have not cited, nor has our research disclosed, a decision of our Supreme Court with respect to the time at which the statute of limitations begins to run in a situation as presented by this case. Defendant appellee cites *Teachey v. Gurley,* 214 N.C. 288, 199 S.E. 83, as standing for the proposition that the cause of action arose at the time of the alleged wrong and that the statute began to run at that time. Under such an application of the statement in *Teachey,* the ten year statute would have started to run in 1935 in this case, and plaintiffs' action would be barred. While it may be true that a statement to this effect was made, nevertheless the opinion in *Teachey* was concerned with an *express trust* not a trust imposed by equity. It was held in *Teachey* that the three year statute was applicable to the case and that it began to run when the *cestui que trust* was made aware of the repudiation or disavowal of the trust by the trustee. The statement for which defendant appellee cites *Teachey* was not necessary to a disposition of the case, it was not applicable to the theory or the facts of the case, and we do not consider that the statement as made is controlling under all circumstances.

[12]   We have here a situation where a life tenant, with broad powers of sale or exchange of the estate property, did exchange estate property for the 107.11 acre tract which she had conveyed to her in 1935 by deed sufficient to convey a fee simple estate. She thereafter assumed possession and control, and actually made conveyances of the property. Was this conduct sufficient to put her daughter and grandson on notice that she was asserting a claim to the property adverse to them? We think not. Had the 107.11 acre tract been properly conveyed to her as life tenant, with power of disposition as contained in the will, she could have appropriately done everything that she did do. Therefore no conduct on her part, until 1962, would serve to raise in anyone's mind the thought that she claimed adverse to the remaindermen. We hold that the recording of the deed conveying fee simple title to defendant appellee, instead of conveying to her a life estate, was not notice to plaintiff appellants of a claim adverse to them; they had no cause to be and were not parties to the transaction.

For a comprehensive discussion, and collection of cases, upon the question of when the statute of limitation starts to run against en-

forcement of a constructive trust, see, Annot., 55 A.L.R. 2d 220 (1957), and 55 A.L.R. 2d 220, (Later Case Service, 1968).

Under the circumstances of this case we hold that the ten year statute of limitations did not begin to run until defendant life tenant exercised dominion over the property inconsistent with her rights as life tenant with power of disposition, and in a manner adverse to the interests of the plaintiff remaindermen, which would put the remaindermen on notice that she was claiming the property adversely to them. Cf., *Pearson v. Pearson*, 227 N.C. 31, 40 S.E. 2d 477.

In 1962 defendant life tenant executed deeds to two of plaintiff remaindermen asserting that she was seized in fee, and purporting to convey a life estate to one remainderman, with remainder over to the other remainderman. This record discloses that remaindermen were fully aware of the content of these deeds; that the deeds were accepted and recorded by the two plaintiff remaindermen; therefore, the remaindermen were thereby put on notice that the life tenant claimed the fee simple title to the 107.11 acre tract adverse to their interests as remaindermen. The ten year statute of limitations began to run in 1962, and this action was instituted in 1967. The plaintiffs' action is not barred unless by laches.

**[13]** There is nothing to indicate that defendant life tenant is entitled to the exceptional relief of the doctrine of laches; no purchaser for value from her can be prejudiced because even as life tenant she had the right to convey fee simple title; and the defendant life tenant herself has not been prejudiced by the delay of five years in bringing the action, except that possibly her plans to dispose of the property contrary to her husband's will might be frustrated. Plaintiffs' action is not barred by reason of laches.

The judgment appealed from is reversed, and this cause is remanded for entry of judgment decreeing that Mary R. Alexander holds the undisposed portion of the 107.11 acre tract in trust for herself as life tenant, with full power and authority to sell and convey any part or all of said tract, at any time and upon such terms as she may desire, and to use, invest and reinvest the proceeds from such sale, in such manner and for such objects as she may deem advisable, and that she shall not be held, expected or bound to account to any court or to any person for any part of said tract or any of the proceeds of any sale thereof; and further decreeing that she holds the remainder after her life estate in said tract in trust for Mary Brevard Alexander Howell, but that in the event Mary Brevard Alexander Howell predeceases the life tenant, that she holds said remainder in

trust for Billy Shaw Howell, Jr.; all in accordance with Item II and Item III of the will of S. B. Alexander, Jr.

Reversed and remanded with instructions.

Britt and Parker, JJ., concur.